# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Ruther Mae Bauer,<br><br>Debtor.<br><br>Ruther Mae Bauer,<br><br>Plaintiff,<br><br>v.<br><br>Credit Central, LLC, Credit Central of Anderson, LLC, Credit Central of Tennessee, LLC, Credit Central of Texas, LLC, and Credit Central South, LLC D/B/A Credit Central Loans and Taxes,<br><br>Defendants. | C/A No. 19-02441-DD<br><br>Adv. Pro. No. 20-80012-DD<br><br>Chapter 7<br><br>**Order Denying Motion to Dismiss** |

This matter is before the Court on a motion to dismiss Ruther Mae Bauer's ("Plaintiff") adversary proceeding filed by Credit Central, LLC, Credit Central of Anderson, LLC, Credit Central of Tennessee, LLC, Credit Central of Texas, LLC, and Credit Central South, LLC D/B/A Credit Central Loans and Taxes (collectively "Defendants") on March 5, 2020 [Docket No. 6].  After consideration of the pleadings and the arguments of the parties made at the hearing on the motion, for the reasons set forth below, Defendants' motion to dismiss is denied.

## **FACTS AND PROCEDURAL HISTORY**

On June 1, 2018, Plaintiff entered into a loan agreement with the defendant Credit Central, LLC ("Credit Central") that contained an arbitration agreement ("Arbitration Agreement"). The Arbitration Agreement provides that "any and all disputes, claims, or controversies of any kind between us arising out of or relating to the relationship between us will be resolved through mandatory, binding arbitration." On May 3, 2019, Plaintiff filed her chapter 7 bankruptcy case. Plaintiff listed her debt of Six Hundred Ninety-Two and 36/100 ($692.36) to Credit Central, LLC on

her Schedule D. She received a discharge pursuant to 11 U.S.C. §§ 524 and 727 on August 13, 2019. A copy of Plaintiff's discharge order was served by first class mail and a certificate of service was filed on August 15, 2019, reflecting service on Credit Central.[1]

Plaintiff's third amended complaint states that on or about January 22, 2020, Credit Central sent out a mass mailing to customers, including Plaintiff, regarding a "settlement opportunity" ("Settlement Letter"). The Settlement Letter offers an opportunity to pay "65% of the outstanding balance," ($422.00 of the $649.16) in order for the Defendants to "furnish to the credit bureaus" a remaining balance of zero. The letter states that to "take advantage of [the] offer," Plaintiff should make a lump sum payment of $422.00 by April 30, 2020.

Plaintiff filed this adversary proceeding against Defendants on February 6, 2020 and Defendants filed a motion to dismiss on March 5, 2020. Defendants' motion to dismiss is based "on the grounds that Plaintiff entered into an Arbitration Agreement that covers this dispute, claim, or controversy." On April 6, Plaintiff filed an objection and memorandum in opposition to Defendants' motion and on April 13, Defendants filed a memorandum in support of their motion to dismiss. On April 15, Plaintiff filed a reply to Defendants' memorandum. The Court held a hearing on April 21, 2020.

After multiple amendments, the complaint is limited to causes of action for violations of the discharge injunction pursuant to 11 U.S.C. §524 and disgorgement pursuant to 11 U.S.C. §105.

## JURISDICTION AND VENUE

Jurisdiction is proper in this instance pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Credit Central is headquartered in Greenville, South Carolina and a substantial part of the events occurred here.

---

[1] This service was completed through the Bankruptcy Noticing Center.

**LEGAL STANDARD**

Defendants' motion indicates that it is made pursuant to Federal Rule of Bankruptcy Procedure 7012. That Rule incorporates Federal Rule of Civil Procedure 12. Although the motion is styled as a motion to dismiss, the sole argument advanced by Defendants is that Plaintiff's causes of action must be submitted to arbitration. As a result, the motion is actually in the nature of a motion to compel arbitration. In any event, where arbitration is at issue, a court must "first determine if a claim is subject to arbitration before addressing any issue on the merits of the claim, including [a] Rule 12(b)(6) motion to dismiss." *Little v. Career Educ. Corp. et al.*, C/A No. 16-00707-JW, Adv. No. 19-80041-JW, pg. 5 (Bankr. D.S.C. Jan. 3, 2020).

Under the Federal Arbitration Act ("FAA"), to compel arbitration of a controversy the court "must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citing *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)). Whether the parties have agreed to arbitrate is determined by state contract law. *Id.* at 73-74 (citing *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 229 (2d Cir. 2016)). Motions to compel have a "'standard similar to that applicable for a motion for summary judgment.'" *Id*. at 74 (quoting *Nicosia*, 834 F.3d at 229). Once the Court concludes that a valid arbitration agreement exists, "'it should then consider whether the dispute falls within the scope of the arbitration agreement.'" *Id.* (quoting *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 26 (2d Cir. 2002)). The validity and scope of the Arbitration Agreement has not been contested by the parties.

The dispute is whether Congress intended for these bankruptcy causes of action to be nonarbitrable and if some causes of action are arbitrable, whether to stay the proceeding pending arbitration.

## **ARGUMENTS OF THE PARTIES**

The main point of contention between the parties is whether the Bankruptcy Code conflicts with the FAA. Defendants' view is that Congress established a liberal federal policy favoring arbitration and that the FAA is to be robustly followed. Defendants cite the many efforts to demonstrate conflicts between the FAA and other federal statutes and note that courts have rejected most of them. They argue that because Plaintiff's bankruptcy case does not involve reorganization and is already closed, these issues can be sent to arbitration, because doing so would not interfere with or affect distribution of the estate. Defendants rely on the heavy burden that Plaintiff has in showing a clearly expressed congressional intention to displace the FAA with the Bankruptcy Code. Defendants essentially rest on the argument that "the strong policy favoring arbitration outweighs the conflicting policies of the Bankruptcy Code in this case." Accordingly, Defendants argue that Plaintiff's causes of action cannot be maintained in the bankruptcy court, but must instead be submitted to arbitration, and therefore this adversary proceeding must be dismissed.

Plaintiff does not dispute that the FAA creates a liberal policy favoring arbitration. However, Plaintiff believes that Congress intended for the bankruptcy court to have comprehensive jurisdiction over core bankruptcy matters, creating an inherent conflict with the FAA. She contends that her causes of action are core bankruptcy issues and enforcement of the Arbitration Agreement would be a substantial interference with the Bankruptcy Code's primary purpose of providing her, and debtors like her, a fresh start. Accordingly, Plaintiff argues that Defendants' motion should be denied and that her adversary proceeding should be allowed to proceed.

## DISCUSSION

**1. Federal Arbitration Act and Its Interaction with Other Federal Law**

The FAA was enacted in 1925 "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). In enacting the FAA, "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys.*, 138 S. Ct. at 1621 (quoting 9 U.S.C. § 2). The United States Supreme Court has stated that the FAA "establishes a liberal federal policy favoring arbitration agreements" and "require[s] courts to respect and enforce agreements to arbitrate," including the terms of arbitration the parties select. *Id.* (internal citations omitted).

The United States Supreme Court has further stated:

> The [FAA], standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims. Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes.

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (internal citations omitted). Thus, although arbitration is strongly favored, if the party opposing arbitration can establish that a federal statute's text or legislative history evidences Congress's intent to maintain the ability of parties to have their claims heard in a judicial forum or that there is an inherent conflict between the underlying purposes of the statute and arbitration, arbitration may not be required.

This is not an easy burden to satisfy, because courts, when interpreting statutes that allegedly touch the same issue, "must [ ] strive to give effect to both." *Epic Sys.*, 138 S. Ct. at 1624 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 1974)). The party opposing arbitration must show that there is

a "clear and manifest" congressional intent for a statute to displace the FAA. *Id*. Repealing an act by implication is strongly disfavored and there is a presumption that "Congress will specifically address" preexisting law before suspending the law's normal operations in a later statute. *Id.* (citing *United States v. Fausto*, 484 U.S. 439, 452 (1988)). And in fact, as Defendants point out, while the United States Supreme Court has never considered a conflict between the Bankruptcy Code and the FAA, it has rejected all other attempts to "manufacture conflicts" with another federal statute to date, including with the National Labor Relations Act,[2] the Securities Exchange Act of 1934,[3] the Racketeer Influenced and Corrupt Organizations Act,[4] the Credit Repair Organizations Act,[5] and the Age Discrimination in Employment Act of 1967.[6]

Although the United States Supreme Court has to date been unwilling to find an inherent conflict between the FAA and any other federal statute, bankruptcy is a unique area of law that has been specifically carved out by Congress. The United States Supreme Court has recently emphasized this in *Allen v. Cooper*, 140 S. Ct. 994 (2020). *Allen v. Cooper* involved a copyright infringement cause of action asserted against the state of North Carolina and a defense of sovereign immunity asserted by the state. The main question considered by the Court was whether Congress had the authority to abrogate States' Eleventh Amendment immunity from copyright infringement suits. In that case, the appellant argued that copyright law is similar to bankruptcy law because both are mentioned in Article I of the United States Constitution, and because the Court has previously determined (in *Central Va. Community College v. Katz,* 546 U.S. 356 (2006)) that "in bankruptcy, [ ] sovereign immunity has no place." The Court stated that the Bankruptcy Clause of Article I is

---

[2] *Epic Sys.*, 138 S. Ct. 1612.
[3] *Shearson/Am. Exp.,* 482 U.S. 220.
[4] *Id.*
[5] *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012).
[6] *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

uniquely situated due to the "singular nature" of a bankruptcy court's jurisdiction and created "bankruptcy exceptionalism." The Court stated:

> [E]verything in *Katz* is about and limited to the Bankruptcy Clause; the opinion reflects what might be called bankruptcy exceptionalism. In part, *Katz* rested on the "singular nature" of bankruptcy jurisdiction. That jurisdiction is, and was at the Founding, "principally *in rem*" – meaning that it is "premised on the debtor and his estate, and not on the creditors" (including a State). For that reason, we thought, "it does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction." In remaining part, *Katz* focused on the Bankruptcy Clause's "unique history." The Clause emerged from a felt need to curb the States' authority. The States, we explained, "had wildly divergent schemes" for discharging debt, and often "refus[ed] to respect one another's discharge orders." "[T]he Framers' primary goal" in adopting the Clause was to address that problem – to stop "competing sovereigns[ ]" from interfering with a debtor's discharge. And in that project, the Framers intended federal courts to play a leading role. The nation's first Bankruptcy Act, for example, empowered those courts to order that States release people they were holding in debtors' prisons. So through and through, we thought, the Bankruptcy Clause embraced the idea that federal courts could impose on state sovereignty. In that, it was *sui generis*—again, "unique"—among Article I's grants of authority.
>
> Indeed, *Katz*'s view of the Bankruptcy Clause had a yet more striking aspect, which further separates it from any other. The Court might have concluded from its analysis that the Clause allows Congress to abrogate the States' sovereign immunity (as Allen argues the Intellectual Property Clause does). But it did not; it instead went further. Relying on the above account of the Framers' intentions, the Court found that *the Bankruptcy Clause itself* did the abrogating. Or stated another way, we decided that no congressional abrogation was needed because the States had already "agreed in the plan of the Convention not to assert any sovereign immunity defense" in bankruptcy proceedings. We therefore discarded our usual rule—which Allen accepts as applying here—that *Congress* must speak, and indeed speak unequivocally, to abrogate sovereign immunity. Our decision, in short, viewed bankruptcy as on a different plane, governed by principles all its own. Nothing in that understanding invites the kind of general, "clause-by-clause" reexamination of Article I that Allen proposes. To the contrary, it points to a good-for-one-clause-only holding.

*Allen v. Cooper*, 140 S. Ct. 994, 1002-03 (2020) (internal citations omitted). Thus, the United States Supreme Court has suggested that bankruptcy is a unique area of law which requires different analysis, rules, and interpretation.

For that reason, lower courts, including the Fourth Circuit, have considered claims of inherent conflicts between the FAA and the Bankruptcy Code and have concluded that inherent conflicts exist. In *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015), the Fourth Circuit affirmed the district court's holding that the appellant was not required to arbitrate a "constitutionally core" claim. The appellant, Oteria Moses, entered into a consumer loan agreement with Western Sky Financial, LLC, pursuant to which Mrs. Moses agreed to pay 149% interest. *Moses*, 781 F.3d at 66. The loan agreement included a clause requiring disputes to be resolved by arbitration. *Id.* at 67. Mrs. Moses then filed bankruptcy, and the loan servicer, CashCall, Inc., filed a proof of claim. *Id.* at 68. Mrs. Moses filed an adversary proceeding seeking a declaratory judgment that the loan was "void *ab initio*" under North Carolina law and seeking damages under the North Carolina Debt Collection Act. *Id.* CashCall filed a motion to dismiss the adversary proceeding or to stay the proceeding and compel arbitration. *Id.* The bankruptcy court denied the motion to dismiss or compel arbitration, finding that the declaratory judgment action was a core bankruptcy proceeding because it involved the allowance or disallowance of claims, but finding that Mrs. Moses' second cause of action was non-core and it could therefore not enter a final judgment. *Id.* at 68-69. CashCall appealed, and the district court affirmed, exercising its discretion to keep the second cause of action together with the first, citing efficiency and inconsistency concerns. *Id.* at 69.

The Fourth Circuit acknowledged the strong policy favoring arbitration but stated, "At the same time, however, 'Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Id.* at 71 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). Using the framework articulated by the United States Supreme Court in *Shearson/American Express*, discussed above, the court found that requiring Mrs. Moses to send her declaratory judgment claim, which was constitutionally core, to arbitration would pose an inherent conflict with the Bankruptcy Code. *Id.* at

72. The court noted that "bankruptcy . . . represents a fundamental public policy." *Id.* The court pointed out:

> Grounded in the Constitution, bankruptcy provides debtors with a fresh start and creditors with an equitable distribution of the debtor's assets. To those ends, a principal purpose of the Bankruptcy Code is to provide debtors and creditors with "the prompt and effectual administration and settlement of the [debtor's] estate.'" Similarly, a principal purpose of the Bankruptcy Code is also to centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments. Ease and centrality of administration are thus foundational characteristics of bankruptcy law.

*Id.* at 72 (internal citations omitted). Because the resolution of Mrs. Moses' declaratory judgment cause of action would directly impact the claims against her estate and therefore her chapter 13 plan, the court found that requiring her to arbitrate that claim would "substantially interfere with [her] efforts to reorganize." *Id.* at 73 (quoting *Phillips v. Congelton, LLC (In re White Mountain Mining Co.)*, 403 F.3d 164, 170 (4th Cir. 2005)). Therefore, the court found that Mrs. Moses was not required to arbitrate her first cause of action and affirmed the district court. With respect to the second cause of action, the non-core claim, the Fourth Circuit reversed the district court's decision and found that requiring Mrs. Moses to arbitrate the state law cause of action would not interfere with her efforts to reorganize, and therefore no inherent conflict arose – that is, hearing the non-core claim did not trump CashCall's right to enforce the arbitration agreement. *Id.* at 82.

Another judge in this district recently considered a motion to dismiss or compel arbitration. In *Little v. Career Education Corporation et al.*, C/A No. 16-00707-JW, Adv. No. 19-80041-JW (Bankr. D.S.C. Jan. 3, 2020), Judge Waites considered various state law causes of action, such as negligence, fraud, breach of contract, and violation of the South Carolina Unfair Trade Practices Act, as well as abuse of process under 11 U.S.C. § 105 and dischargeability under 11 U.S.C. § 523(a)(8). With respect to the state law claims, Judge Waites found that certain threshold issues regarding whether the dispute was arbitrable should be decided by the court and set a further hearing for

presentation of evidence on that issue. However, Judge Waites found that the court should hear the bankruptcy law claims. With respect to the § 105 claim, Judge Waites stated, "There is little doubt for the Court that a delegation to an arbitrator of the bankruptcy court's § 105 authority would inherently conflict with the Bankruptcy Code." *Id.*, pg. 6. Judge Waites found that the dischargeability cause of action should also be heard by the bankruptcy court, because such a determination would have "a material effect on the payments under a chapter 13 plan and a debtor's reorganization and goal of a fresh start." *Id.*, pg. 7. Accordingly, Judge Waites denied the motion to compel arbitration with respect to the bankruptcy law claims.

Taking into consideration Supreme Court precedent, as well as the cases decided by the Fourth Circuit and in this district, the Court now turns to Plaintiff's causes of action.

### 1. First and Third Causes of Action

As set forth above, Plaintiff has amended her complaint multiple times. In the most recent amended complaint, filed April 23, both the first and third causes of action assert claims for violation of the discharge order. Plaintiff states that Defendants' sending the Settlement Letter was done knowingly and willfully and constitutes a violation of discharge orders pursuant to 11 U.S.C. § 524(a)(2). Sending these claims to arbitration poses an inherent conflict with the Bankruptcy Code and frustrates the principal purposes that the Bankruptcy Code aims to achieve.

A determination regarding a violation of a discharge injunction is a core bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2). *In re Anderson*, 553 B.R. 221, 228 (S.D.N.Y. 2016) (citing *Haynes v. Chase Bank USA, N.A. (In re Haynes)*, Adv. Pro. No. 13-08370-rdd, 2014 WL 3608891, at *7 (Bankr. S.D.N.Y. 2014)). A creditor's violation of the discharge injunction substantially interferes with the debtor's fresh start, a primary purpose of bankruptcy. Congress has assigned to the bankruptcy court the duty to enforce its orders. "To permit a party other than the bankruptcy court to make such determinations would undermine the court's ability to enforce both its own orders and the

Bankruptcy Code and would 'strip the courts of their primary enforcement mechanism.'" *Little*, pg. 6 (quoting *Hooks v. Acceptance Loan Co., Inc.*, 2011 WL 2746238 (M.D. Ala. July 14, 2011)).

Defendants point to the fact that Plaintiff's bankruptcy case is a chapter 7 case and is closed. Defendants argue, therefore, requiring Plaintiff to arbitrate her causes of action would not interfere with any effort to reorganize. In so arguing, Defendants rely on a Second Circuit case, *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104 (2006).

In *Hill*, the debtor filed an adversary proceeding asserting violations of the automatic stay and unjust enrichment. *Id.* at 106. At the time the Second Circuit heard the creditor's motion to stay or dismiss the adversary proceeding in favor of arbitration, the debtor had received her chapter 7 discharge and her bankruptcy case was concluded. *Id.* The Second Circuit, considering only the stay violation cause of action,[7] acknowledged that this cause of action was a core bankruptcy proceeding. *Id.* at 108. However, the Second Circuit held that requiring arbitration of the claim would not cause an inherent conflict with the Bankruptcy Code, because, as a result of the completed administration of the debtor's case and her discharge, she no longer required the protection of the automatic stay, and the resolution of the claim would not affect her bankruptcy estate. *Id.* at 109. Additionally, the debtor's case was a purported class action and so her causes of action "lack[ed] the direct connection to her own bankruptcy case that would weigh in favor of refusing to compel arbitration." *Id.* Finally, the Second Circuit found that the cause of action did not require the unique perspective and expertise of the bankruptcy court. *Id.*

Plaintiff responds that the Second Circuit's decision in *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382 (2d. Cir. 2018), decided recently and subsequent to the *Hill* decision, is directly on point and therefore is more instructive here. In *Anderson*, after the debtor received his chapter 7 discharge,

---

[7] The debtor had indicated that she would abandon the unjust enrichment claim if it were found to be arbitrable; therefore, the district court dismissed that cause of action and the debtor did not appeal the dismissal. *Hill*, 436 F.3d at 107.

11

the creditor refused to remove a charge-off notation on his credit report. *Id.* at 385. The debtor therefore reopened his bankruptcy case and filed a putative class action complaint against the creditor, asserting violations of the discharge injunction. *Id.* The creditor moved to stay the proceeding and compel arbitration. *Id.* After the bankruptcy court declined to compel arbitration and the district court affirmed, the Second Circuit affirmed as well. The Second Circuit stated:

> It is well established that the discharge is the foundation upon which all other portions of the Bankruptcy Code are built. We have observed that "[b]ankruptcy allows honest but unfortunate debtors an opportunity to reorder their financial affairs and get a fresh start. This is accomplished through the statutory discharge of preexisting debts. We have previously described the "fresh start" procured by discharge as the "central purpose of the bankruptcy code" as shaped by Congress, permitting debtors to obtain a "fresh start in life and a clear field unburdened by the existence of old debts." The "fresh start" is only possible if the discharge injunction crafted by Congress and issued by the bankruptcy court is fully heeded by creditors and prevents their further collection efforts. Violations of the injunction damage the foundation on which the debtor's fresh start is built.

*Id.* at 389 (internal citations omitted). Then, citing *Hill*, the very case relied on by Defendants, the Second Circuit stated:

> [W]e find that arbitration of a claim based on an alleged violation of Section 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding." We come to this conclusion because 1) the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the Code; 2) the claim regards an ongoing bankruptcy matter that requires continuing court supervision; and 3) the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code. The fact that Anderson's claim comes in the form of a putative class action does not undermine this conclusion.

*Id.* at 389-90 (internal citations omitted). Specifically, with respect to the discharge injunction, the court noted that the bankruptcy court "retains a unique expertise in interpreting its own injunctions and determining when they have been violated." *Id.* at 390-91. Thus, the court distinguished *Hill*, which dealt with stay violations from the case before it, which dealt with the discharge injunction, as does the case before this Court. The Court agrees with Plaintiff that the Second Circuit's decision in

*Anderson* is more instructive than the *Hill* decision.[8]  Plaintiff is not required to arbitrate her first and third causes of action.

### 2. Second Cause of Action

Plaintiff seeks to disgorge Defendants of any and all payments made to them in response to the Settlement Letter pursuant to the contempt and abuse of process provisions inherent in 11 U.S.C. §105. This claim is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). *See Bliss Techs., Inc. v. HMI Indus., Inc. et al. (In re Bliss Techs., Inc.)*, 307 B.R. 598, 602-603 (Bankr. E.D. Mich. 2004) (stating that proceedings are not core if they do "not invoke a substantive right created by federal bankruptcy law and . . . could exist outside of the bankruptcy.").

Delegation of the bankruptcy court's §105 powers to an arbitrator would inherently conflict with the Bankruptcy Code. Section 105 powers are explicitly granted to bankruptcy courts by Congress as a "central enforcement mechanism." *Little*, pg. 6. Section 105 is critical to the court's ability to enforce its own orders. It is not a mechanism for use by non-judicial officers. Arbitration of the second cause of action is not required.

### CONCLUSION

Bankruptcy cases are different in purpose and scope from most other debtor-creditor matters and two-party disputes in general. Bankruptcy law is collectivist in nature, impacting a debtor and potentially many of her creditors. Its purpose protects the debtor's fresh start while equitably adjusting and enforcing creditor payment rights. Bankruptcy law is a uniform federal law and its prophylactic treatment of the debtor-creditor relationship would be significantly impaired were the contours of discharge dependent upon the source of enforcement of the discharge injunction. Uniform application of the law of discharge and how its entry is enforced should not depend upon whether the issue is

---

[8] The Court also notes that both cases discussed the potential for the adversaries to be class actions. This case was also filed as a potential class action. However, Plaintiff has not yet asked the Court to certify a class, so it is unclear if this matter will become a class action. In any event, given the other considerations, the potential for this adversary proceeding to become a class action is not particularly relevant to the Court's decision and therefore it is not further discussed.

before a judicial officer or an arbitrator and should not vary depending upon whether a creditor has contracted for arbitration or not. To the extent that the bankruptcy clause in the United States Constitution was intended to ensure uniformity in application of the law to sovereign states, likewise it requires uniformity of the law of discharge to all debtors and creditors.

Inherent conflicts between the FAA and the Bankruptcy Code exist with respect to Plaintiff's causes of action. Accordingly, Plaintiff is not required to submit these claims to arbitration. Because Defendants' motion asserts no other basis for dismissal of Plaintiff's adversary proceeding, the Motion to Dismiss is denied. Defendants shall file and serve their responsive pleading within fourteen (14) days after entry of this order. Fed. R. Bankr. P. 7012(a)(1).

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/08/2020**



Entered: 06/08/2020

David R. Duncan
US Bankruptcy Judge
District of South Carolina